**Giulio NATTA, Giorgio Mazzanti, and Giorgio Boschi, Plaintiffs,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 99-63.**

United States District Court
District of Columbia.

Dec. 14, 1964.

Francis D. Thomas, Jr., Bacon & Thomas, Washington, D. C., and Harvey W. Mortimer, Darby & Darby, New York City, for plaintiffs.

Joseph Schimmel, Solicitor's Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 seeking a judgment authorizing the defendant, Commissioner of Patents to grant Letters Patent of the United States containing claims 76, 77, 78 and 105 of an application Serial No. 629,085, filed December 18, 1956, by the plaintiffs. The application has an effective filing date of December 23, 1955.

The invention described in the application relates to the preparation of copolymers by subjecting mixtures of propylene and ethylene to polymerizing conditions in a solvent medium and in the presence of a catalyst prepared from an organo-metallic compound and a transition metal compound, which, according to the specific examples, is preferably trihexyl aluminum with titanium tetrachloride or vanadium oxychloride.

At trial, plaintiffs withdrew all claims to their method, leaving at issue only

claims devoted to the product. Claim 76 is representative, and reads as follows:

76. Copolymerizates of propylene and ethylene which consist essentially of linear copolymers of propylene and ethylene which are amorphous at the X-rays, contain from 5% to 70% of ethylene in the copolymer molecule, show, in the infra-red spectrum therefor, absorption bands between 13.4 microns and 13.8 microns, and have a molecular weight above 20,000, said copolymerizates being essentially free of homopolymers.

The Patent Office rejected all the claims on the ground that the "differences between the subject matter sought to be patented and the prior art (were) such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." In support of this rejection, the Patent Office relied upon a United States patent to Schreyer, No. 2,962,451, granted November 29, 1960, on an application filed October 24, 1955, and a Belgian patent to Montecantini, dated December 6, 1955.

The Schreyer patent describes the production of ethylene polymers and copolymers, and mentions specifically copolymers of ethylene and propylene. It contemplates using a coordination catalyst consisting of vanadium tetrachloride or exytrichloride and an organo-metallic compound, such as lithium aluminum tetrabutyl, in an organic solvent; thus producing linear polymers of high molecular weight, which are described in some of the specific examples as "rubbery". The patent does not, however, expressly describe some of the properties set forth in claim 76, such as amorphousness, freedom from homopolymers, or the showing on the infra-red spectrum.

The Montecantini patent discloses that certain catalysts will convert an olefine-propylene mixture into mixed polymerizates, the catalyst being obtained by reacting metal compounds, such as titanium tetrachloride, with organo-metallic compounds, such as aluminum alkyls. Example 12 of the patent describes polymerization of propylene with triethyl aluminum and vanadium tetrachloride as catalyst. Examples 20, 21 and 22 describe the use of an ethylene-propylene monomer mixture in Examples 3, 4 and 5, the latter using triethyl aluminum and titanium tetrachloride as the catalyst. Example 22 (p. 28) expressly states that a mixed polymerizate is obtained, and Example 20 refers to the presence in the product of amorphous substances superior to those appearing in polymers obtained from ethylene-free propylene.

The validity of the position of the Patent Office Board of Appeals was the central issue at trial. This position was that since the process disclosed by the references and that utilized by the plaintiffs are the same, the products produced by these processes would also be the same. The Board stated "if the reactants and the catalysts utilized are the same and the conditions of operation are also not different, it appears to us that the products of the process suggested in the reference should be the same, and that a recitation of the physical characteristics of the products cannot serve as patentable distinctions".

It was not seriously disputed that the plaintiffs' claims called for certain characteristics of the product that were not to be found in the references. The evidence of the plaintiffs, therefore, was devoted to showing that these characteristics indeed defined a new entity; whereas the arguments of the defendant were devoted to showing that the plaintiffs were in fact claiming only what would have been obvious from following the processes already known.

Defendant asserted that the language defining: "copolymerizates of propylene and ethylene which consist essentially of linear copolymers of propylene and ethylene"; the language defining: "amorphous at the X-rays"; the language defining: "from 5% to 70% of

ethylene in the co-polymer molecule"; the language defining: "a molecular weight above 20,000"; the language defining: "essentially free of homopolymers", and the language relating to absorption bands in the infrared spectrum all serve merely to describe a product that would necessarily be produced by following the method set forth in the references.

In view of the "presumption of correctness" attaching to Patent Office adjudications, the plaintiffs have the burden of showing that this view of the subject matter was clearly inconsistent with the evidence before the Patent Office Tribunals. Abbott et al. v. Coe, 71 App.D.C. 195, 109 F.2d 449 (1939).

In order to meet this burden, plaintiffs introduced evidence of laboratory experiments which were said to have been conducted in accordance with the process disclosed by the prior art. After carefully weighing the probative value and technological force of the results of these experiments, the Court is constrained to conclude they were insufficient to overcome the presumption referred to above.

In connection with the "copolymerizates of propylene and ethylene which consists essentially of linear copolymers of propylene and ethylene", the defendant pointed out that a reasonable interpretation of the Schreyer patent would lead one skilled in the art to believe that a mixture of ethylene and propylene could be used according to the process of that patent to produce copolymers such as ethylene and propylene. Similarly, with regard to the language "from 5% to 70% of ethylene in the copolymer molecule", it was not shown that the Patent Office was clearly wrong in finding that only the skill of the art would be involved in utilizing various ratios of ethylene and propylene in forming the desired copolymer.

As to "molecular weight above 20,000", the reference patent does state that polymers made according to its teaching have "tremendously high molecular weights". The language defining a product "amorphous at the X-rays", and the language relating to "absorption bands in the infra-red spectrum", while not found as such in the prior art, still could be reasonably attributed to the product produced by the process relied upon by the Patent Office, since the plaintiffs did not clearly demonstrate the facts to be otherwise. Finally, the limitation that the copolymerizates be "essentially free of homopolymers" was certainly not shown to be without suggestion by the prior art. Indeed, it seems more reasonable to follow the Patent Office's position that in view of the disclosure of fractional extraction by Montecantini it would have been obvious to expect the process of Schreyer to have produced such a result.

Plaintiffs also urged at trial that to obtain the product of claim 76 it was essential to employ a ratio of propylene to ethylene of at least 1 to 1 in the gaseous reaction medium, or a 4 to 1 ratio in the liquid phase. The Court must agree with the defendant, however, that the probative force of this argument is severely attenuated by the absence in the specification of a statement that this distinction is critical.

Viewing the evidence as a whole, the Court cannot say the plaintiffs have proved the Patent Office was clearly in error. Accordingly, the Court finds for the defendant and against the plaintiffs, and orders the Complaint to be dismissed.

The above Opinion contains Findings of Fact and Conclusions of Law.